**Ogontz School Trust**

*Samuel H. High, Jr.,* of *High, Swartz, Roberts & Seidel,* for accountant.

*James W. Sutton, Jr.,* Assistant Attorney General, for Commonwealth.

TAXIS, P. J., October 23, 1974.—The reason for the filing of the present account is the lapse of 18 years since inception of the trust and also to decide upon the use of accumulated income. The trust continues.

The account shows a balance of principal and income, valued as of October 31, 1972, of $357,322.59, composed of the securities set forth on pages 1 and 2 of the account, and cash.

The estate presently before the court is not subject to payment of transfer inheritance tax.

The trust arises as follows:

"That the Trustor does hereby nominate, constitute and appoint the Jenkintown Bank and Trust Company, its Trustee and deposits with it the cash, securities and real estate more particularly set forth in Schedule A hereto attached and made a part of this Agreement, IN TRUST NEVERTHELESS, to invest the same and to keep the same invested and reinvested and to distribute the net income derived therefrom as follows:

"(1) To pay unto Alice Gentry, the Secretary of The Ogontz School, the sum of Five Thousand Dollars ($5,000.00) a year for such time as in the sole judgment of the Trustee it will be necessary to maintain the records of the Ogontz School.

"(2) To use the remaining net income, and when the employment of Miss Gentry ceases, all of the net income, for the granting of such scholarships and for such students as The Pennsylvania State University may from time to time decide, such scholarships to be for students attending The Ogontz Center of The Pennsylvania State University; provided, however,

that the first five (5) scholarships granted to The Ogontz Center shall be to such person or persons as may be selected by Abby A. Sutherland, President of the Ogontz School, and thereafter the granting shall be by The Pennsylvania State University, as above set forth."

Accountant advises the court that Pennsylvania State University has insufficient demand for scholarships to consume all of the income so that there is presently an accumulation of income in the amount of $36,000. Pennsylvania State University has requested that the excess income be used for purposes which will be for the benefit of all students on the Ogontz Campus. By a letter dated December 20, 1972, and submitted to the court, Pennsylvania State University suggests the following projects from excess income:

"Purchase of books and other materials for the library

"Purchase of equipment and material for a Career Development Center

"Purchase of equipment and material for student organization use such as that which would be necessary to establish a campus communication network (campus radio station and/or TV monitor type news information system)

"Two other projects which I believe would be of considerable indirect benefit to all students are:

"Support for an outstanding teaching award

"Support for an outstanding advisor award."

The matter was submitted to the Attorney General who requested time to study these proposals and, subsequently, a hearing was held on December 14, 1973, at which time the views of the trustee, together with the views of the Attorney General, were presented to the court. In short, the Attorney General opposes the use of income as suggested and contends that no

sufficient need was shown to deviate from the terms of the trust as presented to the court. The Attorney General takes the view that the purchase of books and materials could be better made in the budget of the Pennsylvania State University rather than dipping into the income of the Sutherland scholarship money and that, although the need for these scholarships for the present seem to be diminishing, the Attorney General seems to think, and with some merit, that this picture may change and it is necessary that these funds be preserved for students in future scholarships. The court, therefore, rules that, in light of the Commonwealth's views, the suggested use of income is denied and accumulation of income shall continue.

A more serious question concerns the request of the trustee for interim principal compensation in the sum of $2,000. This has been opposed by the Commonwealth. The point is a perplexing one. At common law, there was no such thing as interim principal compensation in a charitable trust unless the trust instrument expressly provided for it. In IV Scott, Trusts 8,390, (3d Ed., 1967), Professor Scott said:

"The trustees of a charitable trust may be entitled to compensation to the same extent as private trustees. In a case of charitable trusts, however, it is more common to provide expressly or impliedly in the terms of the trust that the trustees are to serve without compensation."

This court, in an earlier case, refused such compensation (see Fenstermacher Est., 51 D. & C. 2d 701, 92 Montg. 324 (1969)), and has reaffirmed its earlier views in a most recent case. See Pender Trust, 24 Fiduc. Rep. Ann. Fid. Rev. October 1974. For the reasons therein set forth, the request for interim principal compensation is refused.

Subject to distributions heretofore properly made

and subject to the views expressed in this adjudication, the net ascertained balances of principal and income are awarded as set forth under the last paragraph of the petition for adjudication.

The account is confirmed, and it is hereby ordered and decreed that Industrial Valley Bank and Trust Company, trustee, as aforesaid, forthwith pay the distributions herein awarded.

And now, October 23, 1974, this adjudication is confirmed nisi.